For purposes of this opinion, the Attorney General notes that the three statutory provisions comprising the self-audit law were originally presented to the General Assembly collectively as Senate Bill 94-139. When the bill passed and was codified into law, the provisions were placed into different sections of the Colorado Revised Statutes. The Attorney General reads these statutory provisions as one comprehensive law and interprets them in a manner that maintains consistency throughout the provisions.
The headings within this document are intended to be read as part of the formal opinion of the Attorney General.
 PENALTY IMMUNITY
1. Immunity under the self-audit law is available only where aviolation is actually corrected, e.g., unpermitted dischargescannot continue unabated.
Under the self-audit law, immunity from certain penalties is available only if the disclosure is voluntary. See §25-1-114.5(4), C.R.S. In order for a disclosure to be considered voluntary, several conditions must be met, including that the disclosing party must
 initiate the appropriate effort to achieve compliance, pursue compliance with due diligence, and correct the noncompliance within two years after the completion of the voluntary self-evaluation.[1] Where such evidence shows the noncompliance is the failure to obtain a permit, appropriate efforts to correct the noncompliance may be demonstrated by the submittal of a complete permit application within a reasonable time.
§ 25-1-114.5(1)(c), C.R.S. (emphasis added).
Under the law, the two-year time period for achieving compliance begins once the voluntary self-evaluation is completed; however, the statute does not specify a time period within which the disclosing party must complete its evaluation. The statute does not allow entities to conduct self-evaluations in perpetuity in order to circumvent the two-year compliance requirement.[2] Such a reading would be contrary to the intent of the law that the disclosing party act in good faith in order for the statute's protections to apply. Additionally, under the statute, penalty immunity is only available if the disclosing party cooperates with the State in its investigation of the disclosed issues. See §25-1-114.5(1)(d), C.R.S. An assertion by the disclosing party that actual compliance is not necessary due to an "ongoing" self-evaluation would conflict with the requirement to cooperate with the State.
The self-audit law does not preclude Colorado from making a determination that compliance should be achieved in a shorter period of time than two years. What would be considered "appropriate effort," "pursues with diligence," or a "reasonable time" under section 25-1-114.5(1)(c), C.R.S. will vary depending on the factors such as the number, type, and complexity of actions that must be undertaken to achieve compliance. A violation of discharging without a permit or similar type violation must be corrected within a reasonable amount of time after discovery of the violation. In determining a "reasonable amount of time" the State may consider the totality of the circumstances surrounding the violation. The State may also, in its discretion, allow the disclosing entity to operate under a compliance schedule to achieve compliance.
In summary, penalty immunity is not available unless the disclosing entity achieves actual compliance with environmental laws.
 AUDIT PRIVILEGE
2. The privilege does not affect the State's authority toinvestigate and provide written responses to citizen complaints.
The self-evaluation law does not restrict, and in fact contemplates, State investigation of issues identified in a voluntary disclosure. See § 25-1-114.5(1)(d), C.R.S. The State retains the authority to respond to all citizen complaints, including those concerning a regulated entity that has made a voluntary disclosure.
Moreover, the privilege provisions of the statute do not limit the State's authority to release any non-privileged information in its possession. Non-privileged information includes the fact that a violation occurred, the facts underlying the violation, whether the violation has been corrected, and other information to which privilege does not extend pursuant to sections 13-25-126.5(3) and (4), C.R.S.
3. The privilege does not apply to information and data that areotherwise required by law to be accessible to the State even whensuch information or data are contained in an audit report.
The documentary privilege provided by the audit law does not cover factual information or data that are required by law to be available to the State. Inclusion of such information or data in an environmental audit report does not extend the audit privilege to that information or data. Factual information or data that are contained in an audit report but that are not otherwise required by law to be available to the State may be privileged. Nevertheless, if such facts or data underlie a violation for which penalty immunity is being sought, those facts and/or data are not privileged and must be disclosed. Thus, if an audit report cites to the fact that a holding tank is twenty-five years old, that fact is not privileged. The analysis that the tank should be replaced within ten more years, if not otherwise required to be available to the State, is privileged. In other words, the self-audit law only protects the self-critical analysis in the audit, and not the underlying facts. The fact that a violation has occurred is never privileged. (See also, paragraph 7, below.)
4. The privilege does not affect the State's authority to enterany site, copy records, inspect, monitor, or otherwise investigatecompliance.
Colorado's environmental statutes authorize State officials to enter and inspect facilities for the purpose of investigating compliance. See § 25-8-306, C.R.S. (Water Quality Control Act); §25-7-111(2)(c), C.R.S. (Air Pollution Control Act); §25-15-301(3), C.R.S. (Hazardous Waste Management Act). The self-audit law does not diminish or in any way affect Colorado's authority to conduct an inspection of any property, premise, or place to investigate any actual, suspected, or potential source of pollution or to ascertain compliance with any regulation or order.
Under the self-audit statute, the privilege applies to an environmental audit report that is prepared as the result of a voluntary self-evaluation conducted in good faith. The privilege, however, does not apply to documents or information required to be made available to a regulatory agency, even if included in the environmental audit report itself. See §§ 13-25-126.5(4)(a) and (b), C.R.S. Additionally, the privilege does not apply to any "information obtained by a regulatory agency through observation, sampling, or monitoring." § 13-25-126.5(4)(c), C.R.S.
Colorado's procedures to enter, copy records, inspect, and monitor for compliance are not impacted by the audit privilege.
5. The privilege does not affect the State's authority to verifythe accuracy of information submitted by permittees and to verifythe adequacy of sampling, monitoring, and other methods used todevelop reported information.
Colorado's environmental statutes authorize State officials to require certain information from regulated entities for the purpose of determining compliance status. The State is also entitled to verify the accuracy of any information it obtains, as well as the adequacy of methods used to develop the information. The self-evaluation law does not change this authority in any way. In fact, the statute contemplates investigation of issues identified in a disclosure by requiring cooperation on the part of the disclosing entity in order to obtain immunity from penalties.See § 25-1-114.5(1)(d), C.R.S. Therefore, the privilege does not hinder the State's authority to verify any information submitted by a regulated entity.
6. The privilege does not affect the State's authority to acquireinformation necessary for the State to issue an emergency order orobtain immediate injunctive relief as required by law, even whenthe information is contained in an audit report.
Colorado possesses broad authority to issue administrative cease and desist orders or to seek injunctive relief for violations of its environmental statutes. See §§ 25-8-307, -605, and -607(1), C.R.S. (Water Quality Control Act), §§ 25-7-112(1), -113, -122.5(1), and -511(1), C.R.S. (Air Quality Control Act), §25-15-308(2), C.R.S. (Hazardous Waste Management Act). No incamera proceeding is required before the State can issue emergency orders or seek injunctive relief.
Information required to be reported under any law, including information needed to determine whether emergency action is necessary, is not privileged under the self-audit law. See §§13-25-126.5(4)(a) and (b), C.R.S. Further, the statute specifically states that except for allowing immunity from certain penalties, it "does not affect any authority the department of public health and environment has to require any action associated with the information disclosed in any voluntary disclosure of an environmental self-evaluation." § 25-1-114.5(7), C.R.S.
The State retains full authority to acquire any information necessary to issue emergency orders and obtain immediate injunctive relief in all appropriate circumstances.
7. The public's rights under state and federal laws to accessnon-privileged information possessed by the State or a regulatedentity are not affected by the self-evaluation law.
Under state law, privileged information is protected from public disclosure. See §§ 24-72-204(1)-(3), C.R.S.; C.R.C.P. 26.2(b)(1). The self-audit law provides only that an environmental audit report itself is privileged and is therefore protected from disclosure, subject to certain exceptions. See §§ 13-25-126.5(3) and (4), C.R.S. Any type of non-privileged information that would have been available to the public pursuant to state or federal law before the self-evaluation law was enacted is still available to the public. This includes information contained in an environmental audit report when (a) the report has been disclosed to the State (assuming no other privilege applies); (b) the audit privilege has been waived by the person or entity holding the privilege; (c) the Colorado Department of Public Health and Environment has determined that the privilege does not apply pursuant to section 13-25-126.5(4), C.R.S.; or (d) a court or administrative law judge has determined after an in camera review that an exception to the privilege exists pursuant to section13-25-126.5(3)(b), C.R.S., or that the privilege does not apply pursuant to section 13-25-126.5(4), C.R.S. (See also, paragraph 3,above.)
8. The civil liability imposed by section 13-25-126.5(5)(b)(I),C.R.S., and criminal sanctions under section 13-25-126.5(b)(II),C.R.S., only apply when information is disclosed in contraventionof limitations imposed by a court or administrative law judgeorder under section 13-25-126.5(5)(a), C.R.S.; therefore, theself-evaluation law does not affect employee protection rightsunder state or federal law.
Section 13-25-126.5(5)(a), C.R.S., outlines the procedures for challenging an assertion of privilege under the statute. That section contemplates an in camera review of all or part of the environmental audit report for purposes of determining application of the privilege. It further provides that "[a] moving party who obtains access to an environmental audit report pursuant to the provisions of this subsection (5) may not divulge any information from the report except as specifically allowed by the court or administrative law judge." § 13-25-126.5(5)(a), C.R.S.
Under sections 13-25-126.5(b)(I) and (II), C.R.S., only persons who knowingly divulge information in violation of a court or administrative law judge order after an in camera review are liable for damages or may be criminally sanctioned. The statute does not seek to punish persons who obtained their information from any source other than the in camera review itself.
9. Maintaining the privilege requires that the facility actuallycorrect noncompliance within a reasonable period of time.
Section 13-25-126.5(3)(b)(I)(B), C.R.S., states that the privilege under the self-audit law does not apply if
 [t]he person or entity did not initiate appropriate efforts to achieve compliance with the environmental law or complete any necessary permit application promptly after the noncompliance with the environmental law was discovered and, as a result, the person or entity did not or will not achieve compliance with the environmental law or complete the necessary permit application within a reasonable amount of time.
(Emphasis added). This provision expressly requires prompt efforts to achieve actual compliance within a reasonable amount of time in order to retain the privilege. A "reasonable amount of time" would vary depending on factors such as the number and complexity of actions that must occur to come into compliance.
Issued this 14th day of April, 2000.
KEN SALAZAR Attorney General
ALAN GILBERT Solicitor General
FELICITY HANNAY Deputy Attorney General
CASEY SHPALL First Assistant Attorney General
ANNETTE QUILL Assistant Attorney General
[1] The statute permits extension of the two-year period for compliance at the discretion of the Department of Public Health and Environment, which is subject to de novo review by a district court or administrative law judge. See § 25-1-114.5(2), C.R.S.
[2] See, e.g., § 13-25-126.5(2)(e), C.R.S. ("Once initiated, such voluntary self-evaluation shall be completed within a reasonable period of time. Nothing in this section shall be construed to authorize uninterrupted voluntary self-evaluations.")